1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10

11

12

13

14

ACTUATE CORPORATION,

                    Plaintiff,

    v.

AON CORPORATION,

                    Defendant.

_____/

No. C 10-05750 WHA

**OMNIBUS ORDER ON
MOTIONS IN LIMINE**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The pretrial conference in this action was heard on June 18, 2012.  In advance of that conference, the parties submitted motions in limine.

**ACTUATE MOTION IN LIMINE NUMBER ONE (TO EXCLUDE
TESTIMONY ABOUT OTHER LAWSUITS BY ACTUATE).**

Actuate's motion in limine number one is **DENIED WITHOUT PREJUDICE**.  Evidence of other lawsuits may be admissible to show financial bias for Actuate witnesses who received or will receive a commission based on the outcome of this and other lawsuits.  Foundation must first be laid that these witnesses will receive a commission based on the outcome of this lawsuit before evidence of other Actuate lawsuits is relevant.  Evidence of other lawsuits may also be relevant if Actuate has taken inconsistent positions on similar contractual terms in other lawsuits.

However, evidence of other lawsuits for the sole purpose of arguing that Actuate is a litigious company is not admissible.  Aon will not be able to present evidence and argument on other lawsuits in its opening statement.  Prior permission must be obtained from the Court before any mention of other lawsuits.

**United States District Court**

For the Northern District of California

**ACTUATE MOTION IN LIMINE NUMBER TWO (TO STRIKE EXPERT TESTIMONY OF DR. BRUCE ABRAMSON).**

Actuate's motion in limine number two is **GRANTED AS FOLLOWS**.  Actuate seeks to limit the expert testimony of Dr. Bruce Abramson to custom and practice in the software industry, and strike his interpretation of "unambiguous terms" in the 2003 agreement.  Actuate also objects to his opinion regarding whether there was a "transfer of Actuate's software as part of Aons sale of TWG."  This order agrees that some of Dr. Abramson's opinions encroach upon the exclusive province of the Court and jury.

Subject to Rule 403, it is usually proper for an expert to explain custom and practice to a jury.  When, however, it comes to what actually occurred in the specific case at hand, an expert should be allowed to state what happened only as to those specific aspects as to which his specialized knowledge and training and lab work are critical to the analysis.  *SEC v. Dalfoitis*, No. C 11-00137 at 2 (N.D. Cal. June 7, 2012) (Alsup, J.).  An expert cannot tell the jury whose version of events is truthful.  *Id.* at 4.  An expert witness cannot give an opinion as to her legal conclusion, such as providing legal meaning to the contracts as written.  *Elsayed Mukhtar v.California State University, Hayward*, 299 F.3d 1053, 1066 (9th Cir. 2002); *McHugh v. United Service Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999).

Dr. Abramson will be permitted to opine on the meaning of the term "CPU" in the software licensing and computer hardware industry in 2003.  This is proper expert testimony on industry custom to aid in the interpretation of an ambiguous term in the contract.

Some other opinions, however, are inadmissible legal conclusions.  Both parties' experts are at fault.  This order will not attempt to identify each paragraph in each expert report that is improper.  This will be done at trial one question at a time.  A general guidance:  both experts will be limited on direct examination to testimony about custom and practice in the software industry, and likely be precluded from testimony about the particular contracts and conduct at issue in this action.

**United States District Court**
For the Northern District of California

**ACTUATE MOTION IN LIMINE NUMBER THREE (TO EXCLUDE TESTIMONY REGARDING GENERAL PRACTICE OF CONTRACTING).**

Actuate's motion in limine number three is **GRANTED AS FOLLOWS**.  Actuate moves to exclude pursuant to Rules 402 and 403 Aon's general practice when entering into license agreements.  Specifically, Actuate seeks to preclude Anthony Jackovich, Aon's employee who signed the 2003 agreement, from testifying that the company's general practice when entering into licensing agreements was to have those agreements cover all software purchased in the past and all software to be purchased in the future.

Evidence of undisclosed subjective intent of a party is irrelevant to determining the meaning of contractual language.  *Wint v. Price*, 4 Cal. App. 4th 1159, 1166 n.3 (1992).  It is undispute that this general practice was never communicated to Actuate during the negotiations of the 2003 agreement (*see also* Chin Decl. Exh. F at 59–61).  Therefore, Mr. Jackovich is precluded from discussing intentions and general practices that were not disclosed to Actuate.  However, Mr. Jackovich may *possibly* testify about his intent during the 2003 agreement insofar as it is necessary to explain objective manifestations in the parties subsequent course of conduct.  *Crestview Cemetery Assn. v. Dieden*, 54 Cal. 2d 744, 754 (1960).  Another possible exception is where Mr. Jackovich was mistaken about his interpretation of a contract, and Actuate *knows* of that mistaken belief but does nothing to correct it.

**ACTUATE MOTION IN LIMINE NUMBER FOUR (TO EXCLUDE EVIDENCE THAT AON HAS BEEN HARMED BY ACTUATE'S ALLEGED CONDUCT).**

Actuate's motion in limine number four is **DENIED WITHOUT PREJUDICE**.  Actuate moves to exclude *quantification* of any harm that Aon suffered as a result of not having access to upgrades to Actuate's software.  Aon can argue that damages should be offset to the limited extent that *Actuate's own expert* has quantified the amount.  This amount is still in play only if that expert testifies about the quantified amount at trial.

**ACTUATE MOTION IN LIMINE NUMBER FIVE (TO EXCLUDE EVIDENCE THAT THE 2003 AGREEMENT GOVERNED THE SOFTWARE AT ISSUE).**

Actuate's motion in limine number five is **DENIED**.  Actuate's moves to exclude evidence that the 2003 agreement governed the software at issue because Exhibit A to the agreement did not include the titles of the software at issue.  However, this contractual interpretation is subject

3

1    to reasonable dispute.  The "Future Orders" provision in the 2003 agreement (section 10.12)

2    stated (emphasis added):

3              [T]he terms of this Agreement (other than pricing
               terms which shall be specified in future orders)
4              shall apply to any future licenses by Licensee of
               Software from Actuate and to *any future written*
5              *orders*, by Licensee for Software and *Maintenance*
               *Services from Actuate*.

6

7    This provision could reasonably be interpreted to encompass any software that Aon's continued

8    to order and to pay maintenance for.  Aon continued to make maintenance payments for the

9    software at issue.  Similarly, section 10.15 stated:

10             This Agreement and Exhibits. . . constitute the
               entire, final, complete and exclusive agreement
11             between the parties and supersede all previous
               agreements or representations, oral or written,
12             relating to this Agreement.

13   This provision could reasonably be interpreted to encompass prior purchase orders for perpetual

14   licenses to the software at issue.  Contrary to Actuate, Aon's trial brief makes these contentions

15   and does not abandon the argument that the 2003 agreement did not itself cover the software at

16   issue (Dkt. No. 132 at 11–12).

17          Moreover, Aon was considered an "Affiliate" of AWG at the time the 2003 agreement

18   was entered into.  Arguably, Aon's did not exit that agreement simply because it was no longer

19   an affiliate of AWG because contract terms — such as the "Affiliates" provision of the 2003

20   agreement — "must be so interpreted as to give effect to the mutual intention of the parties as it

21   existed at the time of contracting."  CAL. CIV. CODE § 1636.

22

23                    *                    *                    *

24

25   **AON MOTION IN LIMINE NUMBER ONE (TO EXCLUDE EVIDENCE
     OF DEFENDANT'S FINANCIAL CONDITION OR WORTH).**

26          Aon's motion in limine number one is **GRANTED AS FOLLOWS**.  Aon moves pursuant to

27   Rule 402 and 403 to exclude evidence of or references to its financial information, including

28   "profits, net worth, number of employees, number of offices, or total size of the [affiliate]

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   companies."  At the pretrial conference, Aon narrowed its request to exclude only financial

2   information such as revenue.  Actuate agreed at the pretrial conference that its revenues would

3   not be relevant information.  Therefore, evidence of Aon's revenue is excluded unless good

4   reason comes up at trial to make it relevant.

5        **AON MOTION IN LIMINE NUMBER TEN (TO STRIKE
         EXPERT TESTIMONY OF DR. STEVEN KURSH).**

6        Aon's motion in limine number ten is **GRANTED AS FOLLOWS**.

7        In his report, after detailing the history of computer processor development, Dr. Steven

8   Kursh opined that the term CPU in a software license agreement should have been understood to

9   mean a single core processor as early as 2003 (Kursh Rpt at ¶¶ 29–30, 66–69).  Aon claims that

10  Dr. Kursh is not qualified to offer expert testimony about computer development and licensing

11  because he does not have a degree in computer science or law.  This order disagrees.  Dr. Kursh

12  is qualified to discuss, generally, the development of computer processors.  He is also qualified

13  to testify about how the term CPU would have been understood in the context of software license

14  agreements.

15       Dr. Steven Kursh teaches in both the College of Business and the College of Engineering

16  at Northeastern University in Boston.  He has taught multi-disciplinary courses that include topic

17  coverage of software architectures, software project implementation, Information Technology

18  (IT) investments, Mobile E-Commerce, and IT assessments.  For eight years, he worked as CEO

19  and founder of a software company where he was personally involved in the negotiation of

20  software licenses and wrote software code.  Dr. Kursh also has served as a consultant for clients

21  seeking assistance with respect to software license agreements, joint development agreements

22  and the like.  He is a certified software development professional as designated by the IEEE

23  Computer Society.  He has testified previously regarding the introduction of multi-core

24  processors into the computer industry and the impact of this technological advance on software

25  licensing (Smith Decl. Exh. G at 27–29, 33–34).

26       However, even though Dr. Kursh is qualified to testify about industry custom, for reasons

27  discussed, he will be limited on direct examination to testimony about custom and practice in the

28

United States District Court

For the Northern District of California

1    software industry, and likely be precluded from testimony about the particular contracts and

2    conduct at issue in this action

3        **AON MOTION IN LIMINE NUMBER ELEVEN (TO
         EXCLUDE WITNESSES FROM THE COURTROOM).**

4        Aon's motion in limine number eleven is **GRANTED IN PART** and **DENIED IN PART**.

5    Aon's moves pursuant to Rule 615, that all non-party representative witnesses be excluded from

6    the courtroom whenever not under examination.  Actuate agrees that fact witnesses should be

7    excluded from the courtroom but seeks to carve out an exception for expert witnesses.

8    Specifically, Actuate requests that Mr. John Hansen (damages expert) and Dr. Steven Kursh

9    (industry customs expert) be allowed in the courtroom even when other witnesses are testifying.

10       The drafters of Rule 615 contemplated that expert witnesses could fall within an

11   exception.  *See United States v. Seschillie*, 310 F.3d 1208, 1213 (9th Cir. 2002) (discussing

12   Advisory Committee Notes to Rule 615).  "[A]n expert who is not expected to testify to facts,

13   but only assumes facts for purposes of rendering opinions, might just as well hear all of the trial

14   testimony so as to be able to base his opinion on more accurate factual assumptions."  *Seschillie*,

15   310 F.3d at 1214.  Therefore, designated party representatives and expert witnesses may be

16   present in the courtroom even when not testifying.  As discussed during the pretrial conference,

17   other witnesses may be in the courtroom for jury selection.

18       **AON MOTION IN LIMINE NUMBER TWELVE (TO EXCLUDE
         DOCUMENTS AND TESTIMONY NOT PRODUCED DURING DISCOVERY).**

19

20       Aon's motion in limine number twelve is **DENIED WITHOUT PREJUDICE**.  Aon moves

21   pursuant to Rule 37 to preclude evidence not properly disclosed during discovery.  Actuate

22   generally agrees, but requests to carve out exceptions for impeachment evidence and evidence in

23   its rebuttal case to address an issue not within the scope of document requests.  Aon's request is

24   far too broad and must be made on an item-by-item basis at trial.

25       **AON MOTION IN LIMINE NUMBER SEVENTEEN (TO
         EXCLUDE WITNESSES KEYUR DANI AND MY NGUYEN).**

26

27       Aon's motion in limine number seventeen is **DENIED WITHOUT PREJUDICE**.  Aon moves

28   to exclude pursuant to FRCP 37 and FRE 403 testimony from Actuate employees Keyur Dani

and My Nguyen during Actuate's case in chief.  Aon's asserts that Messrs. Dani and Nguyen

should not be allowed to testify regarding

>(1) the functionality and performance of Actuate software;

>(2) Actuate's Customer Support Group and Licensing Group;

>(3) the distribution and installation of Actuate software; and

>(4) Aon's use of Actuate's software

because they were not disclosed as witnesses on these topics and because their testimony would

be duplicative of the testimony of Dylan Boudraa, Actuate's FRCP 30(b)(6) witness during fact

discovery.

Mr. Dani is the Director of Customer Support, and Mr. Nguyen is the Vice President of

Customer Support.  They were disclosed as persons with knowledge about "Actuate's customer

support and maintenance and Defendants' use of same; the Aon entities' use of Actuate

software" and "[t]he Aon entities' use of Actuate's software" in Actuate's initial disclosures

(*see, e.g.*, Smith Decl. Exh. I).  At this point, Aon's can only speculate about whether their

testimony will be duplicative or contradictory to that of Mr. Boudraa.  If that is the case, then

Aon can re-raise its objection at trial.  Further briefing is necessary on whether they are

precluded as a matter of law to offer testimony that is inconsistent with testimony by Mr.

Boudraa.

**CONCLUSION**

Two caveats:  Any denial above does not mean that the evidence at issue in the motion is

admitted into evidence — it must still be moved into evidence, subject to other possible

objections, at trial.  And, a grant of a motion in limine does not exclude the evidence under any

and all circumstances; the beneficiary of a grant may open the door to the disputed evidence, for

example.

**IT IS SO ORDERED.**

Dated:  June 18, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7